UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | Magistrate Case No. **08 MJ 1818** |
| | ) | |
| Plaintiff, | ) | |
| | ) | COMPLAINT FOR VIOLATION OF: |
| v. | ) | |
| | ) | Title 8 U.S.C., Sec. 1324 (a)(1)(A)(ii) |
| 1) Fernando CAMPO-Alvares | ) | Transportation of Illegal Aliens |
| 2) Fernando MARTINEZ | ) | and 18 U.S.C., Sec. 2 |
| | ) | |
| Defendant(s) | ) | |

The undersigned complainant, being duly sworn, states:

On or about **June 9, 2008,** within the Southern District of California, defendant **Fernando CAMPO-Alvares and Fernando MARTINEZ** with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, namely, **Santiago NAVARRO-Beas, Elfego GARCIA-Ruiz, and Serafin HERNANDEZ-Garcia** had come to, entered and remained in the United States in violation of law, did transport and move, said aliens within the United States in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

And the complainant further states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

SIGNATURE OF COMPLAINANT
James Trombley
Senior Patrol Agent

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS **11th** DAY OF **JUNE, 2008**

Ruben B. Brooks
UNITED STATES MAGISTRATE JUDGE

**CONTINUATION OF COMPLAINT:**
1.) Fernando CAMPO-Alvares
2.) Fernando MARTINEZ

## PROBABLE CAUSE STATEMENT

Furthermore, the complainant states that **Santiago NAVARRO-Beas, Elfego GARCIA-Ruiz,** and **Serafin HERNANDEZ-Garcia** are citizens of a country other than the United States; that said aliens have admitted that they are deportable; that their testimony is material, that it is impracticable to secure their attendance at the trial by subpoena; and they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.

On June 9, 2008, Border Patrol Agents assigned to the Murrieta Station were working the Interstate 15 corridor. At approximately 11:15 a.m., Agent R. Callaway was observing traffic near the Rainbow Valley Boulevard exit in San Diego County. Agent Callaway observed a black Chevrolet Camaro and a gold Chevrolet Suburban pass his location as he was merging onto the I-15 northbound. Agent Hays observed both vehicles pass his location as he was observing traffic at the I-15 Immigration Checkpoint. Agent Hays was in a marked Border Patrol Sedan in plain view of the motoring public. Agent Hays observed the driver of the black Chevrolet Camaro, later identified as defendant #2 Fernando MARTINEZ, leaning back in the seat and tightly gripping the steering wheel. The Camaro displayed a California license plate. Agent Hays then observed the Suburban directly behind the Camaro pass his location. The Suburban was tailgating the Camaro. Agent Hays observed the front seat passenger of the suburban sitting straight up in the seat in a stiff and rigid manner. Agent Hays also observed the driver, later identified as defendant #1 Fernando CAMPO-Alvares sitting stiff in the seat tightly gripping the steering wheel. As the Suburban passed Agent Hays' location the Suburban hit a bump in the road which caused the Suburban to bounce in a manner that is consistent with heavily loaded vehicles. For these reasons, Agent Hays followed the vehicles in order to make more observations.

Agent Hays observed both vehicles still traveling closely together. Agent Hays observed a female sitting in the rear passenger seat behind defendant #1. All of the occupants were sitting stiff in their seats as Agent Hays drove next to the Suburban on the passenger side. The vehicle registration returned to Aguilar Auto Sales in San Diego, California in the form of a release of liability. Agents assigned to San Diego Sector Border Patrol have apprehended numerous alien smuggling loads that were associated to Aguilar Auto Sales.

As the vehicles approached Rancho California Road, Agent Hays was driving in the number two lane with the Camaro and the Suburban in the number three lane. Agent Hays then proceed to move along side of the Suburban. At this time, the Camaro made a lane change from the number three lane to the number two lane with the Suburban immediately changing lanes as well without signaling. The Suburban barely missed the front end of Agent Hays' sedan.

At approximately 11:30 a.m., Agent Hays performed a vehicle stop of the Suburban in order to perform an immigration inspection of the occupants. Agent Hays was able to see that defendant #1 was using a cellular phone prior to the vehicle stop. The vehicle stopped on I-15 near Murrieta Hot Springs Road on the right hand shoulder. Agent Callaway also arrived on scene. As Agent Hays exited the Service vehicle and started to walk towards the Suburban, Defendant #1 waited for Agent Hays to approach the vehicle and then rapidly accelerated causing the tires to spin hurling rocks towards Agent Hays and his Service sedan, striking both. Agent Hays and Callaway ran back to their Service vehicles. Defendant #1 drove on the shoulder for approximately three quarters of a mile until coming to a stop. Defendant #1 then attempted to exit the vehicle on foot. Defendant #1 was apprehended without incident as he attempted to flee the vehicle on foot.

**CONTINUATION OF COMPLAINT:**
**Fernando CAMPO-Alvares**
**Fernando MARTINEZ**

Agent Hays identified himself to Defendant #1 and questioned him as to his citizenship. Defendant #1 stated that he was born in Mexico and that he was a citizen of Mexico. Defendant #1 stated that he did not have any immigration documents that would allow him to remain in the United States. Agent Callaway approached the vehicle and observed three males lying down in the rear cargo area on the Suburban along with two females in the front. The rear cargo area did not have seats or safety restraints. Agent Callaway identified himself as a Border Patrol Agent and interviewed all five subjects individually as to their citizenship. All five subjects stated that they were born in Mexico. All five subjects stated that they had illegally entered into the United States without any immigration documents. All five subjects also stated that they had recently entered into the United States and were being transported to Los Angeles, California. All six were taken into DHS custody at approximately 11:30 A.M. and transported to the Murrieta Border Patrol Station for processing.

Supervisory Border Patrol Agent A. Velez was monitoring traffic and heard Agents running registration checks on two vehicles, a gold colored Suburban and a black Camaro. Agent Velez notified agents that he was positioned on the Murrieta Hot Springs on ramp to northbound Interstate 15. Agent Velez then noticed the driver of the Camaro was speaking on a cell phone. When the driver noticed Agent Velez in his vehicle, he made what appeared to Agent Velez as a deliberate attempt to conceal the phone, and turned his head away from Agent Velez' position.

Agent Velez then conducted a vehicle stop on the black Camaro. The Camaro yielded just north of the California Oaks off ramp on northbound Interstate 15. Agent Velez approached the vehicle on the passenger side of the vehicle and identified himself as a Border Patrol Agent. Agent Velez observed defendant #2 attempt to conceal something alongside the driver side door near his left leg. It was later determined that the item was a black Motorola i930 Nextel cellular phone. Defendant #2 had placed the phone in the door panel in an attempt to conceal the phone. Agent Velez asked defendant #2 to state his citizenship, and defendant #2 stated that he was a US Citizen. Agent Velez asked defendant #2 if he had any identification, and defendant #2 stated that he did not. Agent Velez asked defendant #2 where he was going, and first he stated Lancaster, then he stated Palmdale, then he stated Lancaster again.

Agent Velez then overheard on the Service radio, that the occupants of the Suburban where under arrest and that it was a bona fide smuggling load. Agent Velez then asked defendant #2 if he had ever been arrested before and he stated that he had been arrested by 'you guys' meaning the Border Patrol for alien smuggling. Agent Velez had reason to believe that defendant #2 was indeed a scout for the alien smuggling event, and that he did not possess any documents to be or remain legally in the United States. Agent Velez placed defendant #2 under arrest and transported him to the Murrieta Station for processing.

Defendant #1 gave consent to Agent Hays and Callaway for the Border Patrol to search his Boost Mobile cellular phone. Agent Velez and Castillo received permission from defendant #2 to search his cellular phone. Agent Velez looked at the phones and observed that a recent call from defendant #2 and defendant #1 had recently been placed. The phone number of defendant #1 was on the phone of defendant #2. The phone number of defendant #2 was on the phone of defendant #1.

CONTINUATION OF COMPLAINT:
Fernando CAMPO-Alvares
Fernando MARTINEZ

### DEFENDANT #1 STATEMENT: Fernando CAMPO-Alvares

CAMPO-Alvares was advised of his Miranda Rights; he stated that he understood his rights and he was willing to make a statement without any immigration documentation allowing him to enter or remain in the United States.

CAMPO stated that he illegally crossed the U.S./Mexico International Boundary three days ago by walking through the mountains near Tecate, California. CAMPO admitted to being arrested before for alien smuggling. CAMPO admitted to making arraignments with a subject named "El Jimmy." El Jimmy offered to wave the smuggling fee in exchange for driving the vehicle with five illegal aliens. CAMPO stated he was following a black Chevrolet Camaro and that he spoke with the driver three times before being stopped.

### MATERIAL WITNESSES STATEMENTS:

Material Witnesses **Santiago NAVARRO-Beas, Elfego GARCIA-Ruiz, and Serafin HERNANDEZ-Garcia** stated that they are citizens and nationals of Mexico illegally present in the United States. They stated that they do not have any immigration documents allowing them to be in the United States legally. They stated that they walked for approximately two nights through the hills until the group came to highway where they waited to be picked up. They were then placed into the suburban.